IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CASEY LAWRENCE, A PARTICIPANT IN, and PERRY LARSON, as TRUSTEE OF, THE PREMIER COMPUTING EMPLOYEE STOCK OWNERSHIP PLAN AND TRUST, <br><br>     Plaintiffs and Counter-Defendants, <br><br> v. <br><br> JULIE A. POTTER, <br><br>     Defendant and Counterclaimant. <br><br> _____ <br><br> JULIE A. POTTER, <br><br>     Third-Party Plaintiff, <br><br> v. <br><br> PREMIER COMPUTING, INC., PREMIER COMPUTING EMPLOYEE STOCK OWNERSHIP PLAN AND TRUST, BRAD ORTON, TERRY HOECHERL, TERRY ARMSTRONG, ROB GILLESPIE, DAN ERICKSON, and DOES 1-10, <br><br>     Third-Party Defendants. | MEMORANDUM DECISION AND ORDER ON PENDING MOTIONS <br><br><br> Case No. 2:17-CV-1239 TS <br><br> District Judge Ted Stewart |

      This matter is before the Court on Defendant Julie A. Potter's Motion for Partial

Judgment on the Pleadings and Counterclaim/Third-Party Defendants' Motion to Dismiss.  For

the reasons discussed below, the Court will grant in part and deny in part both Motions.

## I.  BACKGROUND

Prior to 2006, Defendant Julie A. Potter ("Defendant" or "Potter") and her late husband, Dale Potter, or grantor trusts created for their benefit, owned 100% of Premier Computing Inc.'s ("Premier") issued and outstanding shares of common stock ("Premier Stock").  In 2006, the Potters established the Premier Computing Stock Ownership Plan (the "Plan") and the related Premier Computing Employee Stock Ownership Plan Trust (the "Trust").  The Plan is an Employee Stock Ownership Plan ("ESOP") under the Employee Retirement Income Security Act ("ERISA").  At the time of its establishment, the Potters were the sole fiduciaries of the Plan and the sole shareholders of Premier.

In 2007, the Potters began selling their shares of Premier Stock to the Trust.  The sales were financed by the Potters causing Premier to make cash contributions to the Trust and then having the Trust pay themselves for their shares of Premier Stock sold.  These transactions continued through 2011, at which time the Trust had become the owner of 48% of Premier Stock.  Plaintiffs allege that for each of these sales, either: (1) no independent fiduciary was appointed to represent the Trust and no fair market value determination of Premier Stock was made by a qualified appraiser; or (2) if an appraisal was obtained, the Potters supplied the appraiser with false and misleading information regarding Premier's financial condition in order to inflate the appraised share value and, in turn, the purchase price of Premier Stock sold to the Trust.

On October 1, 2012, the Potters, as shareholders of Premier, entered into an agreement with the Trust, with Dale Potter acting on behalf of the Trust as a Trustee (the "Shareholder Agreement").  The Shareholder Agreement required the Trust pay a control premium for all

remaining shares and that the Potters retain a majority-voting control until the Trust obtained all of the Premier Stock.

On October 12, 2012, the Potters entered into an Amendment to the Shareholder Agreement (the "Amendment").  Like the Shareholder Agreement, the Amendment required the Trust to pay a control premium and provided the Potters with majority-voting control until the Trust owned 75% of the Premier Stock.  Additionally, the Amendment purported to require Premier to pay the Potters an annual salary of $96,000, along with health and life insurance benefits, and to reimburse the Potters for certain taxes.  The Amendment, like the Shareholder Agreement, was signed by the Potters as shareholders for Premier and Dale Potter as Trustee for the Trust.

On October 31, 2012, the Potters and the Trust entered into a Revised Amendment to the Shareholder Agreement (the "Revised Amendment").  The Revised Amendment removed the provision providing the Potters with majority-voting control, but included the provisions requiring a control premium, annual salary, health and life insurance, and tax reimbursement. Unlike the prior agreements, the Revised Amendment was signed not only by the Potters, but also Ken Auton and Perry Larson as Trustees for the Trust.

Dale Potter passed away on November 8, 2012.  After his death, Defendant became the sole non-Trust shareholder of Premier and replaced Dale as chairman of the ESOP Administration Committee, acting as Plan administrator.

On or about December 31, 2013, Defendant sold additional shares of Premier Stock to the Trust (the "2013 Stock Sale").  Plaintiffs allege that Defendant used her position to manipulate and misrepresent Premier's financial data, to overstate and misrepresent the per-share price of

Premier Stock, to omit, fail to disclose, and conceal the truth about Premier's financial data and per-share price of Premier Stock, which caused the Trust to overpay for shares of Premier Stock. After the 2013 Stock Sale, the Trust became the majority shareholder of Premier, with the Trust owning 64% of Premier Stock and Defendant owning the remaining 36%.

On April 14, 2014, Defendant caused Premier to declare and pay a dividend to shareholders (the "2014 Dividend"). Defendant caused Premier to pay 52% of the dividend to herself, despite owning just 36% of Premier Stock.

On December 31, 2014, Defendant sold additional shares of Premier Stock to the Trust (the "2014 Stock Sale"). As with the 2013 Stock Sale, Plaintiffs allege that Defendant caused the Trust to overpay for the shares of Premier Stock that were sold by Defendant to the Trust. Following the 2014 Stock Sale, the Trust owned 82% of Premier Stock and Defendant owned 18%.

On May 20, 2015, Defendant caused Premier to declare and pay a dividend to shareholders (the "2015 Dividend"). Defendant caused Premier to pay 36% of the dividend to herself, despite owning just 18% of Premier Stock.

Plaintiffs bring claims alleging that Defendant breached her fiduciary duty under ERISA and engaged in actions prohibited by ERISA. Plaintiffs also assert state-law claims for breach of fiduciary duty, breach of legal duty, securities fraud, fraud, and negligent misrepresentation.

Defendant denies she engaged in any wrongdoing. However, Defendant brings a Counterclaim and Third-Party Complaint asserting that, if she is found liable, she is entitled to indemnification and/or contribution. In addition, Defendant asserts claims against the Plan and

certain individuals for wrongfully denying her benefits, breaching their fiduciary duties, and violating ERISA's anti-cutback provision.

Defendant seeks dismissal of various claims in Plaintiffs' Complaint and the Counterclaim/Third-Party Defendants seek dismissal of certain claims in the Counterclaim and Third-Party Complaint.

## II.  STANDARD OF REVIEW

These Motions are before the Court under Federal Rules of Civil Procedure 12(b)(6) and Rule 12(c).  The Court applies the same standards in evaluating motions under Rule 12(b)(6) and Rule 12(c).[1]

In considering a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), all well-pleaded factual allegations, as distinguished from conclusory allegations, are accepted as true and viewed in the light most favorable to  the nonmoving party.[2]  The pleading must provide "enough facts to state a claim to relief that is plausible on its face,"[3] which requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."[4]  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[5]

---

[1] *See Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 n.2 (10th Cir. 2002).

[2] *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

[3] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[4] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[5] *Id.* (quoting *Twombly*, 550 U.S. at 557) (alteration in original).

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[6]  As the Court in *Iqbal* stated,

> only a complaint that states a plausible claim for relief survives a motion to dismiss.  Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief.[7]

In considering a motion to dismiss, a district court not only considers the complaint, "but also the attached exhibits,"[8] and "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[9]  The Court "may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."[10]

## III.  DISCUSSION

## A.    MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

Plaintiffs' Complaint asserts seventeen claims for relief.  Defendant seeks dismissal of the majority of Plaintiffs' claims.  Defendant argues that Plaintiffs' state-law claims are preempted by ERISA, are inadequately pleaded, and/or are barred by the applicable statute of

---

[6] *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

[7] *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks omitted).

[8] *Commonwealth Prop. Advocates, LLC v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1201 (10th Cir. 2011).

[9] *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

[10] *Jacobsen*, 287 F.3d at 941.

limitations.  Defendant further argues that Plaintiffs' ERISA claims are not adequately pleaded and are barred or partially barred by the statute of limitations.

1.    *State-Law Claims*

a.    *Preemption*

Defendant argues that Plaintiffs' state-law claims are preempted by ERISA.  "The Supreme Court has recognized only a few federal statutes that so pervasively regulate their respective areas that they have complete preemptive force; ERISA is one."[11]  There are two forms of ERISA preemption: complete preemption and conflict preemption.  Under the doctrine of complete preemption, "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted."[12]

Under conflict preemption, ERISA provides that "the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title."[13]  This "pre-emption provision . . . has a broad scope, and an expansive sweep, and it is broadly worded, deliberately expansive, and conspicuous for its breadth."[14]  "'[R]elate to' is to be given its broad common-sense meaning.  That does not

---

[11] *Hansen v. Harper Excavating, Inc.*, 641 F.3d 1216, 1221 (10th Cir. 2011).

[12] *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004).

[13] 29 U.S.C. § 1144(a).

[14] *Cal. Div. of Labor Standards Enf't v. Dillingham Const., N.A., Inc.,* 519 U.S. 316, 324 (1997) (internal citations and quotation marks omitted).

mean, however, that ERISA preemption is unlimited."[15] "A law 'relates to' a covered employee benefit plan for purposes of [§ 1114(a)] if it (1) has a 'connection with' or (2) 'reference to' such a plan."[16]

The Tenth Circuit has identified four categories of state laws that are conflict preempted by ERISA:

> (1) laws regulating the type of benefits or terms of ERISA plans; (2) laws creating reporting, disclosure, funding or vesting requirements for such plans; (3) laws providing rules for calculating the amount of benefits to be paid under such plans; and (4) laws and common-law rules providing remedies for misconduct growing out of the administration of such plans.[17]

However, "ERISA does not preempt all state law claims" and "has no bearing on those which do not affect the relations among the principal ERISA entities, the employer, the plan, the plan fiduciaries and the beneficiaries . . . ."[18]

        *i.*     *Breach of Fiduciary Duty, Breach of Legal Duty, Fraud, and Negligent Misrepresentation*

Plaintiffs' Eighth, Ninth, and Tenth causes of action assert claims for breach of fiduciary duty based on the Shareholder Agreement, the Amendment, and the Revised Amendment. In each of these claims, Plaintiffs allege that "[a]s majority shareholders of Premier, officers and directors of Premier, and fiduciaries of the Plan, the Potters owed a fiduciary duty of utmost good faith and loyalty to the Trust, beneficiaries of the Trust, the Plan, participants of the Plan,

---

[15] *Airparts Co., Inc. v. Custom Benefit Servs. of Austin, Inc.*, 28 F.3d 1062, 1065 (10th Cir. 1994) (internal citations and quotation marks omitted).

[16] *Dillingham*, 519 U.S. at 324 (internal citations and quotation marks omitted).

[17] *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 990 (10th Cir. 1999).

[18] *Id.* (internal citations and quotation marks omitted).

and all shareholders of Premier."[19]  Plaintiffs further allege that by entering into and signing

these three agreements, "the Potters breached their fiduciary duty to the Trust, beneficiaries of

the Trust, the Plan, participants of the Plan, and all shareholders of Premier."[20]  Plaintiffs allege

that "[t]he Trust, beneficiaries of the Trust, the Plan, participants of the Plan, and all shareholders

of Premier have been damaged as a proximate result of the Potter's and Defendant's breach of

fiduciary duty."[21]

Plaintiffs' Eleventh and Twelfth causes of action involve the 2014 and 2015 dividend

distributions.  Plaintiffs allege that Defendant "owed the Trust a duty to carry out her corporate

duties in good faith, with prudent care, and in the best interests of the corporation."[22]  Plaintiffs

allege that by declaring the dividends, "Defendant breached her legal duty to carry out her

corporate duties in good faith, with prudent care, and in the best interests of the corporation."[23]

Plaintiffs allege that "Defendant's actions constituted gross negligence, willful misconduct, and

intentional infliction of harm to the Trust."[24]  This resulted in damage to the Trust.[25]

Plaintiffs' Fifteenth and Sixteenth causes of action allege fraud and negligent

misrepresentation in relation to the stock sales.  Plaintiffs allege that the Trust was damaged as a

result of Defendant's alleged fraud and negligent misrepresentations.

---

[19] Docket No. 2 ¶¶ 106, 114, 122.

[20] *Id.* ¶¶ 109, 117, 125.

[21] *Id.* ¶¶ 110, 118, 126.

[22] *Id.* ¶¶ 130, 140.

[23] *Id.* ¶¶ 134, 144.

[24] *Id.* ¶¶ 135, 145.

[25] *Id.* ¶¶ 136, 146.

These claims seek remedies for misconduct growing out of the administration of plan assets and affect the relations among the principal ERISA entities. Therefore, they are preempted. Ignoring the allegations contained in their Complaint, Plaintiffs attempt to recast their claims, arguing that they are not brought against Potter "in her role as an ERISA fiduciary, but instead, in her role as a corporate officer and director of the company."[26] Plaintiffs assert that they are bringing these "claims against Potter for violating her duties as a company officer and director."[27]

Plaintiffs' claims are not as limited as they suggest. Claims Eight through Ten, in particular, alleged that the Potters breached their fiduciary duty to the Trust, beneficiaries of the Trust, the Plan, participants of the Plan, and all shareholders of Premier. Thus, it is not true that Plaintiffs are only asserting claims against Defendant for violating her duties to Premier and the Trust. These claims seek to remedy alleged breaches by a Plan fiduciary to the Plan and Plan participants. Such claims are preempted.

Plaintiffs' Eleventh, Twelfth, Fifteenth, and Sixteenth causes of action are more limited in that they only allege claims that resulted in harm to the Trust. However, they are still preempted. Defendant's duties with respect to the Trust grow directly out of ERISA. ERISA requires that "all assets of an employee benefit plan shall be held in trust by one or more trustees."[28] The Trust here holds the Plan assets. Without the Plan, there would be no Trust and,

---

[26] Docket No. 34, at 21.

[27] *Id.*

[28] 29 U.S.C. § 1103(a).

consequently, Plaintiffs would have no cause of action for breaches related to the Trust.[29]

Further, any harm to the Trust is really just harm to the Plan and Plan assets, and any recovery by

the Trust would inure to the benefit of the Plan and Plan participants. Thus, this claim directly

affects the relations among the principal ERISA entities. Additionally, the same allegations that

make up these claims also form the factual basis of Plaintiffs' ERISA claims. Such claims are

preempted.[30] Therefore, the Court will dismiss Plaintiffs' Eighth, Ninth, Tenth, Eleventh,

Twelfth, Fifteenth, and Sixteenth causes of action.

### ii.    Utah Securities Fraud

Defendant argues that Plaintiffs' claims under the Utah Uniform Securities Act are barred

by complete preemption.[31] Under complete preemption, a claim "will be pre-empted if it

provides a separate vehicle to assert a claim for benefits outside of, or in addition to, ERISA's

remedial scheme."[32]

---

[29] *MacDonald v. Summit Orthopedics, Ltd.*, 681 F. Supp. 2d 1019, 1027 (D. Minn. 2010) (finding claim for breach of fiduciary duty was preempted where the claim was dependent on the existence of the plan); *Bacon v. Stiefel Labs., Inc.*, 677 F. Supp. 2d 1331, 1351 (S.D. Fla. 2010) (finding state-law claim for breach of fiduciary duty was preempted because "if the Plan did not exist, Plaintiffs would have no cause of action for breach of corporate fiduciary duty").

[30] *See Settles v. Golden Rule Ins. Co.*, 927 F.2d 505, 509 (10th Cir. 1991); *see also Eckelkamp v. Beste*, 315 F.3d 863, 870 (8th Cir. 2002) (finding ERISA preempted fiduciary duty claim, in part, because "[t]he claim involves exactly the same parties and relies on exactly the same facts as the ERISA breach of fiduciary duty claim").

[31] Plaintiffs' securities claims would not be barred by conflict preemption based on ERISA's savings clause, which provides that "nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities." 29 U.S.C. § 1144(b)(2)(A).

[32] *Davila*, 542 U.S. at 217–18.

In *Aetna Health Inc. v. Davila*,

the Supreme Court laid out a two-part test for determining whether a claim falls within the scope of the civil enforcement provision: "[I]f an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B)."[33]

On the first prong, Plaintiffs argue that their securities fraud claims do not fall within ERISA § 502(a)(1)(B). That provision provides that a participant or a beneficiary may bring suit "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."[34] Plaintiffs argue that complete preemption does not apply because they are not seeking to recover benefits due to them under the terms of the plan, to enforce his rights under the terms of the plan, or to clarify their rights to future benefits under the terms of the plan. Defendant argues that complete preemption is not limited to claims for benefits under ERISA § 502(a)(1)(B), but also applies to claims brought under ERISA § 502(a)(2).

The Supreme Court in *Davila* expressly limited its discussion to claims brought under ERISA § 502(a)(1)(B) and did "not address ERISA § 502(a)(2)."[35] While some courts have expressly extended complete preemption to claims brought under ERISA § 502(a)(2),[36] Tenth Circuit case law on the issue is somewhat unclear. In *David P. Coldesina, D.D.S., P.C.,*

---

[33] *Salzer v. SSM Health Care of Okla. Inc.*, 762 F.3d 1130, 1134 (10th Cir. 2014) (quoting *Davila*, 542 U.S. at 210).

[34] 29 U.S.C. § 1132(a)(1)(B).

[35] *Davila*, 542 U.S. 206 n.1.

[36] *Smith v. Provident Bank*, 170 F.3d 609, 613–14 (6th Cir. 1999).

*Employee Profit Sharing Plan and Trust v. Estate of Simper*,[37] the Tenth Circuit noted both conflict preemption and complete preemption were implicated in plaintiff's vicarious liability claim for breach of fiduciary duty.[38] Since the claim regulated the relationship between plan entities, ERISA conflict preemption was triggered. Additionally, because "[r]egulation of fiduciary duties is also one of the primary subjects of ERISA's civil enforcement scheme," complete preemption was triggered.[39] As a result, the claim was preempted under both conflict and complete preemption.

In a more recent case, however, the Tenth Circuit stated that complete preemption was limited "to claims 'by a participant or beneficiary' of an ERISA-regulated plan 'to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan or to clarify his rights to future benefits under the terms of the plan.'"[40] Because neither the Supreme Court nor the Tenth Circuit has expressly applied complete preemption outside of claims falling within § 502(a)(1)(B), the Court declines to do so here.

Assuming complete preemption would apply, the Court must consider the second prong. Under that prong, "a claim only falls within ERISA's civil enforcement scheme when it is based solely on legal duties created by ERISA or the plan terms, rather than some other independent source."[41] Plaintiffs' claims under the Utah Uniform Securities Act allege that Defendant violated legal duties that arise independently of ERISA or the Plan. Those duties arise under the

---

[37] 407 F.3d 1126 (10th Cir. 2005).

[38] *Id.* at 1139.

[39] *Id.*

[40] *Hansen*, 641 F.3d at 1221–22 (quoting 29 U.S.C. § 1132(a)(1)(B)).

[41] *David P. Coldesina, D.D.S.*, 407 F.3d at 1137.

Utah Uniform Securities Act, which makes it unlawful for any person to "make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading" "in connection with the offer, sale, or purchase of any security."[42] Those duties are independent of any duties Defendant may have under ERISA or the Plan. There can be no question that if Defendant sold shares to the Trust in a private capacity, the Trust would be able to maintain a cause of action despite its status as an ESOP trust. The connection to ERISA or the Plan based on Defendant's status as a fiduciary is merely fortuitous.[43]

Relying on a case from the Southern District of Florida, Defendant argues that these claims are nonetheless preempted. In *Bacon v. Stiefel Laboratories, Inc.*, the court found that claims under the Florida Securities Act were completely preempted. The facts in *Bacon* make clear that the plaintiffs' securities claims were based on the plan, not an independent legal duty. There, the plan allowed employees to own stock in the company, but could not sell, trade, or redeem their shares unless they separated from the company, at which time they had the right to put their shares to the company.[44] The plaintiffs alleged that the defendants engaged in "a scheme to force employees to sell their shares back to the Company at a below-market price, while simultaneously planning to sell the Company at a much higher price than was offered to Plaintiffs."[45] The plaintiffs brought a number of claims, including claims under ERISA and the

---

[42] Utah Code Ann. § 61–1–1(2).

[43] *See David P. Coldesina, D.D.S.*, 407 F.3d at 1137–38 (finding no ERISA preemption where "any connection to the plan is fortuitous").

[44] 677 F. Supp. 2d at 1336.

[45] *Id.*

Florida Securities Act. The court found that the Florida Securities Act was preempted because it provided a remedy of monetary damages that supplemented the remedies provided by ERISA.[46] Of particular importance, the court noted that the remedy plaintiffs were seeking was recovery of plan benefits and, as such, they must proceed under ERISA. Further, the option for the plaintiffs to put their shares to the company arose solely because of the plan.

Here, there are no similar allegations concerning the parties' obligations under the Plan that would implicate Plaintiffs' securities claims.[47] Rather, this cause of action seeks to hold Defendant accountable for her alleged violations of state securities laws based on stock sales to the Trust. There is no claim for Plan benefits, as there was in *Bacon*, and no direct link to the Plan. Instead, any recovery would come from Defendant. Therefore, the Court declines to follow *Bacon* and concludes that Plaintiffs' securities claims are not preempted.

### iii. Punitive Damages

Plaintiffs' Seventeenth cause of action asserts a stand-alone claim for punitive damages. Plaintiffs' state common law claims are preempted and ERISA does not allow for punitive damages. Therefore, there is no basis for punitive damages and this claim will be dismissed. Even if Plaintiffs' state-law claims survived, this claim is still subject to dismissal. A claim for punitive damages is not an independent cause of action, it is a remedy. Plaintiffs have requested punitive damages in their prayer for relief. Therefore, there is no need for an independent claim. Plaintiffs' Seventeenth cause of action is dismissed.

---

[46] *Id.* at 1348.

[47] Neither party has provided the Court with a copy of the Plan.

*b.*     *Failure to Plead with Particularity*

Defendant also argues that Plaintiffs' Thirteenth, Fourteenth, Fifteenth, and Sixteenth causes of action must be dismissed because Plaintiffs have failed to plead fraud with particularity. The Court's discussion here is limited to Plaintiffs' claims under the Utah Uniform Securities Act, as the remaining state-law claims are preempted. For the reasons set forth below, the Court finds that these claims are adequately pleaded.

Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." This means that a claim alleging fraud must "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof."[48]

Defendant is correct that the claims themselves are rather perfunctory. However, the claims explicitly incorporate the other paragraphs of the Complaint. Those paragraphs provide sufficient allegations of Defendant's alleged false statements and material omissions. For example, in relation to the 2013 stock sale, Plaintiffs allege that Defendant used her position "to manipulate and misrepresent Premier's financial data, to overstate and misrepresent the per share price of Premier Stock, to omit, fail to disclose, and conceal the truth about Premier's financial data and per share price of Premier Stock, and thereby caused Premier to overfund, and the Trust to overpay, for the shares of Premier Stock that were sold by Defendant to the Trust."[49] Similar allegations are made in reference to the 2014 stock sale.[50] Plaintiffs further allege that Defendant created misleading and overstated corporate budgets and projections, altered financial

---

[48] *Lawrence Nat'l Bank v. Edmonds (In re Edmonds)*, 924 F.2d 176, 180 (10th Cir. 1991).

[49] Docket No. 2 ¶ 25.

[50] *Id.* ¶ 28.

statements used by the stock appraiser to hide the true financial position of Premier, prevented

other Plan fiduciaries from being able to determine the fair market value of Premier stock, failed

or refused to provide financial information to the other Plan fiduciaries, and provided

incomplete, partial, incorrect or falsified information about Premier. All of this allegedly

resulted in the Trust paying more than fair market value for Premier's stock. Based upon these

allegations, the Court finds that these claims are adequately pleaded.

> c.  *Statute of Limitations*

Defendant next argues that Claims 8 through 10 are barred by the applicable statute of

limitations. These claims are preempted. Therefore, the Court declines to address this argument.

> 2.  *ERISA Claims*

Defendant next argues that Plaintiffs' ERISA claims are barred or partially barred.

> a.  *Failure to State a Claim*

Defendant argues that certain of Plaintiffs' ERISA claims are inadequately pleaded.

Defendant argues that Plaintiffs have failed to sufficiently allege that she was a fiduciary before

her husband's death. Defendant also complains that Plaintiffs have conflated her actions, alleged

breaches, and damages caused with those of her late husband.

Under ERISA,

> a person is a fiduciary with respect to a plan to the extent (i) he exercises any
> discretionary authority or discretionary control respecting management of such
> plan or exercises any authority or control respecting management or disposition of
> its assets, (ii) he renders investment advice for a fee or other compensation, direct
> or indirect, with respect to any moneys or other property of such plan, or has any
> authority or responsibility to do so, or (iii) he has any discretionary authority or
> discretionary responsibility in the administration of such plan.[51]

---

[51] 29 U.S.C. § 1002(21)(A).

While there can be no doubt that Defendant was an ERISA fiduciary after her husband's death, there are limited allegations concerning her status as a fiduciary beforehand. Plaintiffs allege that, at all relevant times, Defendant was a fiduciary of the Plan[52] and that, after her husband's death, Defendant replaced him as the chairperson of the ERISA administrative committee that acted as administrator of the Plan. Plaintiffs further allege that Defendant controlled the financial affairs and financial information of Premier and had sole control of the Plan and Premier's financial information and accounts.[53] These allegations are sufficient to show that Defendant exercised authority and control respecting management or disposition of Plan assets and are sufficient, if a bit sparse, to survive dismissal.

Defendant further argues that Plaintiffs conflate the role Defendant and her husband had in the company and with respect to the Plan in an effort to hold Defendant liable for her husband's actions. While the Complaint could certainly be read this way, it could also be read as alleging that both Defendant and her husband took the actions complained of. Resolution of this issue involves factual determinations that are not appropriate at this stage.

In addition, Defendant argues that Plaintiffs have failed to plead causation and damages with respect to Claims 3, 5, and 6. Defendant argues that Claim 3 is subject to partial dismissal to the extent Plaintiffs rely on the Shareholder Agreement and Amendment because Plaintiffs do not assert that any alleged breach related to these two agreements caused any damages because the Revised Amendment was executed shortly after these two agreements. Even accepting this, there is no basis for dismissing this claim as it also seeks damages related to the Revised

---

[52] Docket No. 2 ¶ 5.

[53] *Id.* ¶¶ 25, 94.

Amendment.  Further, the Agreement and Amendment may be subject to rescission, which courts have held may constitute a proper equitable or remedial relief under ERISA.[54]

As to Claim 5, Defendant argues that it is subject to partial dismissal to the extent that it alleges Defendant's actions "risk[ed] the Plan's tax-qualified status."[55]  Defendant argues that Plaintiffs have failed to allege damages as a result of this created risk.  However, this does not provide a basis for dismissal.  Claim 5 adequately alleges breach and damages in a variety of ways, only one of which is that Defendant's alleged actions risked the Plan's tax-qualified status. Additionally, the October 2013 stock reallocation may be subject to rescission.  Therefore, this claim will not be dismissed on this basis.

As for Claim 6, it is subject to dismissal based on the six-year statute of repose, as will be discussed below.  Therefore, the Court need not decide whether it is adequately pleaded.

      *b.*     *Statute of Limitations*

Defendant also argues that the First, Second, Third, Sixth, and Seventh causes of action are either completely barred or partially barred by the statute of limitations.

29 U.S.C. § 1113 provides:

> No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of--
> (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or
> (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;

---

[54] *See Griggs v. E.I. DuPont de Nemours & Co.*, 385 F.3d 440, 446 n.3 (4th Cir. 2004) (collecting cases).

[55] Docket No. 2 ¶ 90.

except that in the case of fraud or concealment, such action may be commenced
not later than six years after the date of discovery of such breach or violation.

Defendant argues that most of Plaintiffs' ERISA claims fall under the three-year statute
and that they have failed to plead the fraud exceptions. Specifically, Defendant argues that all
claims based on the Shareholder Agreement and its amendments are barred because Plaintiff
Perry Larson signed the Revised Amendment, demonstrating actual knowledge of the contents of
those agreements.

Defendant is correct that this would subject Larson's claims to the three-year limitations
period, but Plaintiffs argue that it is Lawrence, not Larson, who is bringing the ERISA claims.
This distinction is not present in the Complaint and ignores several allegations in the Complaint.
However, this distinction is largely irrelevant because Defendant has failed to demonstrate that
the limitations period would bar Lawrence's claim.[56] Lawrence was hired as president of
Premier in 2015 and became a participant in the Plan at that time. "[T]he limitations period in an
ERISA action begins to run on the date that the person bringing suit learns of the breach or
violation."[57] There are no allegations that Lawrence knew of these alleged breaches prior to
joining Premier and Larson's knowledge of the alleged breaches cannot be imputed to
Lawrence.[58] Thus, even if Larson's claim is barred by the limitations period, Defendant has
failed to show that Lawrence had actual knowledge prior to 2015 when he joined Premier.

---

[56] To the extent the distinction is relevant, the Court could allow Plaintiffs to amend their
Complaint to more explicitly draw this distinction.

[57] *Landwehr v. DuPree*, 72 F.3d 726, 732 (9th Cir. 1995).

[58] *Mason Tenders Dist. Council Pension Fund v. Messera*, 958 F. Supp. 869, 882
(S.D.N.Y. 1997) ("Actual knowledge is measured from the standpoint of the trustees who
commenced the lawsuit and cannot be attributed to them by the knowledge of prior trustees or
other current trustees."); *Dist. 65 Ret. Tr. for Members of Bureau of Wholesale Sales*

Defendant further argues, in a footnote without citation, that Lawrence lacks standing to bring any claims before he became a participant. Defendant is incorrect. 29 U.S.C. § 1132(a) provides that a civil action may be brought by a plan participant, such as Lawrence. Such a suit is brought by the participant in a representative capacity on behalf of the plan as a whole.[59] "Thus, a plaintiff may seek relief under § 1132(a)(2) that sweeps beyond his own injury" and such relief "is not necessarily limited to the period in which he personally suffered injury."[60]

Defendant also argues that Plaintiffs' claims are at least partially barred by the six-year statute of repose. Plaintiffs failed to respond to this argument, but it is well taken. Therefore, all claims arising prior to November 30, 2011, will be dismissed.[61] This results in a partial dismissal of the First, Third, and Seventh causes of action and a complete dismissal of the Sixth cause of action.

B.      MOTION TO DISMISS

Counterclaim/Third-Party Defendants seek dismissal of certain claims in Defendant's Counterclaim and Third Party Complaint. In particular, Counterclaim/Third-Party Defendants seek dismissal of Defendant's Third, Fourth, Seventh, Eighth, Ninth, and Tenth causes of

---

*Representatives v. Prudential Sec., Inc.*, 925 F. Supp. 1551, 1559 (N.D. Ga. 1996) ("The ERISA statute of limitations plainly states that it is the *plaintiff's* actual knowledge that triggers the three-year time bar. Had Congress wished to impute the knowledge of former fiduciaries to successor trustees, Congress certainly could have done so.").

[59] *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 & n.9 (1985).

[60] *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 593 (8th Cir. 2009).

[61] Plaintiffs have not alleged facts that would invoke the "fraud or concealment" exception to the six-year statute of repose.

action.[62]  In response to Counterclaim/Third-Party Defendant's Motion, Defendant states that she chooses not to pursue her Fourth cause of action and agrees to a partial dismissal of her Tenth cause of action.  Therefore, only the Third, Seventh, Eighth, and Ninth causes of action remain for discussion.

### 1.    *Third Cause of Action*

Potter's Third cause of action asserts that Counterclaim/Third-Party Defendants have breached their fiduciary duties under ERISA by failing to perform under the terms of the Shareholder Agreement.  The Shareholder Agreement requires the Plan to purchase the remaining stock owned by the Potters within a reasonable amount of time.  The Shareholder Agreement further provides that Potter's salary, health insurance, and life insurance benefits would remain in place until the stock purchase is completed.  Potter alleges that Counterclaim/Third-Party Defendants have failed to perform as required.  Counterclaim/Third-Party Defendants argue that ERISA prohibits the transactions Potter requests.

ERISA prohibits certain transactions between a plan and a party in interest.[63]  However, that prohibition is subject to certain exceptions.  Potter relies on the exception found in 29 U.S.C. § 1108(e), which allows for the acquisition or sale by a plan of qualifying employer securities in

---

[62] Counterclaim/Third Party Defendants sought dismissal of this claim to the extent that Potter sought indemnification under Premier's Bylaws.  This claim also seeks indemnification under Utah law.  Counterclaim/Third-Party Defendants did not seek dismissal of Defendant's claim under state law.

[63] 29 U.S.C. § 1106(a). There does not appear to be a dispute that Potter qualifies as a party in interest as that term is defined under 29 U.S.C. § 1002(14).

certain circumstances.  To qualify for this exception, the plan must pay adequate consideration, and it must be an eligible individual account plan as defined in 29 U.S.C. § 1107(d)(3).[64]

One such eligible individual account plan is an employee stock ownership plan ("ESOP").[65]  The parties allege that the Plan here qualifies as an ESOP.  An ESOP is defined as an

> individual account plan—(A) which is a stock bonus plan which is qualified, or a stock bonus plan and money purchase plan both of which are qualified, under section 401 of Title 26, and which is designed to invest primarily in qualifying employer securities, and (B) which meets such other requirements as the Secretary of the Treasury may prescribe by regulation.[66]

"Qualifying employer securities" is defined in both ERISA and the Internal Revenue Code ("IRC"), though they are defined differently.  ERISA defines "qualifying employer security" as (1) stock; (2) a marketable obligation; or (3) an interest in a publicly traded partnership.[67]  The IRC, however, defines "qualifying employer security" as an "employer security within the meaning of section 409(l) [of the IRC]."[68]  Section 409(l)(2) defines employer security as "common stock issued by the employer . . . having a combination of voting power and dividend rights equal to or in excess of-- (A) that class of common stock of the employer . . . having the greatest voting power, and (B) that class of common stock of the employer . . . having the greatest dividend rights."[69]

---

[64] 29 U.S.C. § 1108(e).

[65] 29 U.S.C. §§ 1108(e)(3)(A), 1107(d)(3)(A)(ii).

[66] 29 U.S.C. § 1107(d)(6).

[67] 29 U.S.C. § 1107(d)(5).

[68] 26 U.S.C. § 4975(e)(8).

[69] 26 U.S.C. § 409(l)(2).

While the definitions are different, the definition found in the Internal Revenue Code applies here. As stated, an ESOP must meet "such other requirements as the Secretary of the Treasury may prescribe by regulation."[70] 26 C.F.R. § 54.4975-11(a)(1) states that an ESOP must meet the requirements of 26 U.S.C. § 4975(e)(7)(A). Section 4975(e)(7)(A) states that an ESOP is "a stock bonus plan which is qualified, or a stock bonus and a money purchase plan both of which are qualified under section 401(a), and *which are designed to invest primarily in qualifying employer securities*."[71] The next section of that statute, § 4975(e)(8), provides that a "qualifying employer security" is an employer security within the meaning of IRC § 409(l). Because the ERISA statutes and regulations require an ESP to satisfy the IRC's definition, which includes the limitations set forth in §409(l), the Court will use this definition to determine whether the stock at issue here is a qualifying employer security. This is consistent with the limited case law and secondary materials on this issue.[72]

Having determined the correct definition to apply, the Court must determine whether the stock purchase agreement contemplates the acquisition of qualifying employer securities and whether such acquisition was for adequate consideration.

Under section 409(l)(2), qualifying employer securities include "common stock issued by the employer . . . having a combination of voting power and dividend rights equal to or in excess of-- (A) that class of common stock of the employer . . . having the greatest voting power, and

---

[70] 29 U.S.C. § 1107(d)(6)(B); *see also* 29 C.F.R. § 2550.407d-6(c) ("A plan constitutes an ESOP for a plan year only if it meets such other requirements as the Secretary of the Treasury may prescribe by regulation under section 4975(e)(7) of the [Internal Revenue] Code.").

[71] 26 U.S.C. § 4975(e)(7)(A) (emphasis added).

[72] *Neil v. Zell*, 753 F. Supp. 2d 724, 727–29 (N.D. Ill. 2010); IRS Chief Counsel Advice 200109010, 2001 WL 206410 (Nov. 24, 2000).

(B) that class of common stock of the employer . . . having the greatest dividend rights."[73] Plaintiffs argue that the Amendment to the Shareholder Agreement runs counter to these requirements because it allowed the Potters to maintain a majority voting right until after the ESOP owned 75% of the shares. Counterclaim/Third-Party Defendants, however, ignore that the Shareholder Agreement was again amended on October 31, 2012. The Revised Amendment removed the language allowing the Potters to maintain a majority voting right. Potter's Third cause of action only seeks enforcement of the Shareholder Agreement "as finally amended."[74] Even assuming the Amendment would be invalid under ERISA, Potter is not seeking enforcement of the Amendment and the offending provision of the Amendment is not included in the final amendment to the Shareholder Agreement. Therefore, dismissal is not appropriate on this ground.

Counterclaim/Third-Party Defendants also argue that the acquisition was not for adequate consideration. Relevant here, "adequate consideration" is defined as "the fair market value of the asset as determined in good faith by the trustee or named fiduciary pursuant to the terms of the plan and in accordance with regulations promulgated by the Secretary."[75] "In order to rely on the adequate consideration exemption, a trustee or fiduciary has the burden to establish that the ESOP paid no more than fair market value for the asset, and that the fair market value was determined in good faith by the fiduciary."[76]

---

[73] 26 U.S.C. § 409(l)(2).

[74] Docket No. 33, at 4 n.3.

[75] 29 U.S.C. § 1002(18)(B).

[76] *Keach v. U.S. Tr. Co.*, 419 F.3d 626, 636 (7th Cir. 2005).

Counterclaim/Third-Party Defendants argue that Potter cannot show adequate consideration because the Shareholder Agreement imposes a control premium on the remaining shares to be acquired by the ESOP. Plaintiffs argue that "[f]orcing the ESOP to purchase stock from Potter for a control premium price without receiving voting control to justify that premium is not fair market value."[77] Counterclaim/Third-Party Defendants may be correct that the inclusion of a control premium is more than fair market value. However, further factual development is required to resolve this issue. Potter's Counterclaim and Third-Party Complaint contains allegations that Dale Potter worked with ESOP experts and the IRS to ensure that the Shareholder Agreements complied with ERISA. Additionally, there are allegations that the Plan relied on a written evaluation completed by an independent appraiser to determine the fair market value for each stock sale. Whether these actions satisfy the requirements for adequate consideration remains to be determined. Therefore, dismissal is not appropriate at this time.

Counterclaim/Third-Party Defendants also argue that the terms of the Shareholder Agreement requiring the Plan to purchase stock from the Potters in the future violates federal tax regulation. Treasury regulations provided that an "ESOP must not otherwise obligate itself to acquire securities from a particular security holder at an indefinite time determined upon the happening of an event such as the death of the holder."[78] Here, the Shareholder Agreement merely requires that Trust to purchase the stock within a reasonable amount of time. Nothing in the Agreement requires the Trust to acquire securities "at an indefinite time determined upon the happening of an event."

_____

[77] Docket No. 40, at 3.

[78] 26 C.F.R. § 54.4975-11(a)(7)(i).

The remaining provisions of the Shareholder Agreement, as amended, require Premier to provide the Potters with an annual salary and benefits.[79] This claim does not implicate ERISA, as Potter admits,[80] and, thus, does not fall within her Third cause of action. Potter has not brought a breach of contract claim against Premier as it relates to the Shareholder Agreement or its amendments. Therefore, Potter's claim that Premier breached the Shareholder Agreement by failing to provide her with an annual salary and benefits is not properly before the Court. As such, dismissal is not appropriate or necessary.

### 2. *Seventh Counterclaim*

Potter's Seventh Counterclaim seeks contribution under ERISA. Counterclaim/Third-Party Defendants argue that there is no right of contribution under ERISA.

There is a split of authority as to whether there is a right of contribution under ERISA. The Tenth Circuit has not addressed the issue. The four circuit courts that have addressed the issue are evenly split, with the Second and Seventh Circuits concluding that ERISA does allow a right of contribution[81] and the Eighth and Ninth Circuits concluding that it does not.[82] District courts, including district courts within the Tenth Circuit, have reached differing conclusions.

---

[79] Docket No. 26 Ex. C, at 1 ("WHEREAS, Julie Ann Potter and R. Dale Potter receive an annual salary *from Premier Computing Inc.* together with employee benefits such as health and life insurance.") (emphasis added).

[80] Docket No. 33, at 6 ("Unlike the sales of stock, *Premier*, not the Plan, paid the Potters' salary and insurance benefits. Thus, the payment of these benefits is not a prohibited transaction because it does not 'involve[] the plan.'").

[81] *Chesemore v. Fenkell*, 829 F.3d 803, 811–13 (7th Cir. 2016); *Chemung Canal Tr. Co. v. Sovran Bank/Md.*, 939 F.2d 12, 15–16 (2d Cir. 1991).

[82] *Travelers Cas. & Sur. Co. of Am v. IADA Servs., Inc.*, 497 F.3d 862, 864–66 (8th Cir. 2007); *Kim v. Fujikawa*, 871 F.2d 1427, 1432–33 (9th Cir. 1989).

ERISA does not expressly provide for a right of contribution. Those courts that have found a right of contribution under ERISA have done so "either by implication from the statute, or as a part of federal common law."[83] Those cases rely on direction from the Supreme Court, which has "held that courts are to develop a 'federal common law of rights and obligations under ERISA-regulated plans.'"[84] Since "ERISA abounds with the language and terminology of trust law,"[85] courts "are to be guided by the principles of traditional trust law" in developing this common law.[86] Contribution among fiduciaries has roots in traditional trust law.[87] Based on these principals, courts have concluded that the traditional trust law right to contribution is part of ERISA.

In contrast, those courts that have found no right of contribution focus on the fact that Congress did not include contribution as an available remedy. While the Supreme Court has stated that courts are to develop a federal common law in ERISA cases, it has also cautioned that courts should "not engraft a remedy on a statute, no matter how salutary, that Congress did not intend to provide."[88] The Court has stated that ERISA's "carefully crafted and detailed enforcement scheme provides 'strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly.'"[89] "Given the comprehensive nature of

---

[83] *Chemung Canal Tr. Co.*, 939 F.2d at 15.

[84] *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 110 (1989) (quoting *Pilot Life Ins. Co v. Dedeaux*, 481 U.S. 41, 56 (1987)).

[85] *Id.*

[86] *Chemung Canal Tr. Co.*, 939 F.2d at 16.

[87] Restatement (Second) of Trusts § 258.

[88] *Russell*, 473 U.S. at 145 (quoting *Cal. v. Sierra Club*, 451 U.S. 287, 297 (1981)).

[89] *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 254 (1993) (quoting *Russell* 473 U.S. at 146).

the overall statutory scheme" and the Supreme Court's caution "that the statute's failure to include certain remedies should not be construed as an oversight,"[90] the Eighth and Ninth Circuits have both rejected the notion that ERISA allows a right of contribution.

The Court agrees with the latter conclusion. While the courts have been tasked with developing a federal common law under ERISA, the Supreme Court has cautioned against implying remedies that Congress chose not to include. "Simply stated, if Congress had intended to include a right of action for contribution and indemnification it would have done so."[91] Having failed to do so, the Court will not recognize such a remedy and Potter's Seventh cause of action is dismissed.

3.     *Eighth Cause of Action*

Potter's Eighth cause of action seeks contribution under the Utah Uniform Securities Act. Counterclaim/Third-Party Defendants argue that Potter has failed to adequately plead such a claim.

Utah Code Ann. § 61–1–22(4)(a) provides:

Every person who directly or indirectly controls a seller or buyer liable . . . , every partner, officer, or director of such a seller or buyer, every person occupying a similar status or performing similar functions, every employee of such a seller or buyer who materially aids in the sale or purchase, and every broker-dealer or agent who materially aids in the sale or purchase are also liable jointly and severally with and to the same extent as the seller or purchaser, unless the nonseller or nonpurchaser who is so liable sustains the burden of proof that the nonseller or nonpurchaser did not know, and in exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist.

---

[90] *Travelers Cas. & Sur. Co. of Am.*, 497 F.3d at 866.

[91] *Chemung Canal Tr. Co.*, 939 F.2d at 19 (Altimari, C.J., dissenting).

Potter denies that she committed securities fraud. She contends, however, that if she is found liable, then Counterclaim/Third-Party Defendants are similarly liable. Counterclaim/Third-Party Defendants argue that Potter's allegations are insufficient because she failed to indicate how any of the individuals named as Counterclaim/Third-Party Defendants were involved in the stock sales at issue.

While Potter's claim could provide more detail, the Counterclaim and Third-Party Complaint, when read as a whole, provides sufficient factual allegations to avoid dismissal. Potter identifies the individuals who are potentially subject to liability, describes their roles, and alleges that they occupied a similar status and performed similar functions, and materially aided in the sale. These allegations are sufficient to survive a motion to dismiss.

### 4. Ninth Cause of Action

Potter's Ninth cause of action seeks indemnification under the Plan. Counterclaim/Third-Party Defendants argue that the provision of the Plan that provides for indemnification is void under ERISA.

Section 19(g) of the Plan provides: "[Premier] hereby agrees to indemnify each member of the Committee (to the extent permitted by law) against any personal liability or expense resulting from his service on the Committee, except such liability or expense as may result from his own willful misconduct."[92] Plaintiffs argue that this provision is void under 29 U.S.C. § 1110(a). That provision states, in pertinent part: "any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility,

---

[92] Docket No. 33, at 20.

obligation, or duty under this part shall be void as against public policy."[93]  The Department of

Labor interprets § 1110(a) "to permit indemnification agreements which do not relieve a

fiduciary of responsibility or liability."[94]  "Indemnification provisions which leave the fiduciary

fully responsible and liable, but merely permit another party to satisfy any liability incurred by

the fiduciary" are not void under this section.[95]

Counterclaim/Third-Party Defendants argue that because indemnification is permitted

except in cases of willful misconduct, the indemnification provision acts to relieve the judiciary

of responsibility under ERISA, which requires a fiduciary to discharge its duties "with the care,

skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting

in a like capacity and familiar with such matters would use in the conduct of an enterprise of a

like character and with like aims."[96]  Courts have held that similar provisions are void where

they indemnify a fiduciary "so long as the liability for which coverage is sought did not involve

any deliberate wrongful acts or gross negligence."[97]

However, § 1110(a) "simply imposes a flat bar on any fiduciary that has been found to

have violated its duty to the plan from recouping its expenses from the very plan it injured."[98]

Here, there has been no determination that Potter violated her fiduciary duty and, unlike the

defendants in *Johnson v. Couturier*, she is not seeking an advancement of legal fees she is

---

[93] 29 U.S.C. § 1110(a).

[94] 29 C.F.R. § 2509.75-4.

[95] *Id.*

[96] 29 U.S.C. § 1104(a)(1)(B).

[97] *Johnson v. Couturier*, 572 F.3d 1067, 1080 (9th Cir. 2009); *see also Delta Star, Inc. v. Patton*, 76 F. Supp. 2d 617, 640 (W.D. Pa. 1999).

[98] *State St. Bank & Tr. Co. v. Salovaara*, 326 F.3d 130, 138 (2d Cir. 2003).

incurring in this action. Moreover, the indemnification provision only applies "to the extent permitted by law." Unless and until the finder of fact determines Potter violated her fiduciary duties, it would be premature to dismiss her claim for indemnification. If it is determined that Potter did not violate her fiduciary duties, as she contends, there would be no basis to deny indemnification.[99] On the other hand, if it is determined that Potter violated her fiduciary duties as a result of willful misconduct, indemnification would not be available under the Plan, regardless of § 1110(a). Even accepting the argument made by Counterclaim/Third-Party Defendants, § 1110(a) would only invalidate the indemnification clause if Potter is found to have breached her fiduciary duties, but did so not as a result of willful misconduct. This determination will be made at some future point, and dismissal is not appropriate at this time.

## IV. CONCLUSION

It is therefore

ORDERED that Defendant's Motion for Partial Judgment on the Pleadings (Docket No. 28) and Counterclaim/Third-Party Defendants Motion to Dismiss (Docket No. 26) are GRANTED IN PART AND DENIED IN PART as set forth above.

DATED this 30th day of July, 2018.

BY THE COURT:

Ted Stewart
United States District Judge

---

[99] *Packer Eng'g, Inc. v. Kratville*, 965 F.2d 174, 176 (7th Cir. 1992) ("How could anyone take seriously the proposition that ERISA forbids the indemnification of fiduciaries *wrongly* accused of misconduct, when ERISA itself allows a court to award fees to the prevailing side?").